VICTOR J. EVANS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 33063, 38831, 45914.   Promulgated May 12, 1931.

*Edward S. Duvall, Esq.,* and *G. P. Graham, C. P. A.,* for the petitioner.

*T. M. Mather, Esq.,* and *J. M. Morawski, Esq.,* for the respondent.

## OPINION.

Van Fossan: The first question presented for our consideration is whether the petitioner is entitled to the deduction, as an ordinary business expense, of $7,200 paid to John Wedderburn during each of the years 1922, 1925, and 1927, or whether such payments constitute a part of the purchase price of the stock and control of the Randolph Company acquired by the petitioner from Wedderburn under the contract of September 14, 1914.

The petitioner contends that the sum of $50,000 paid by him to Wedderburn was the entire consideration for 2,024 shares of stock of the Randolph Company and that the monthly payments aggregating $7,200 per year were separate and apart from the stock transactions. We can not accept this view. The original contract of September 14, 1914, between the petitioner and Wedderburn embraces the basic elements of their agreement, the purpose of the supplemental contract of September 16 being merely to prevent Wedderburn from disposing of advertising space in the Hearst publications to others than the petitioner. On account of the condition of his health Wedderburn was compelled to relinquish his business activities. He was the owner of a majority of the stock of the Randolph Company and was its advertising and managing agent. His motive in executing the contract with the petitioner was to secure the highest price for his interest in the Randolph Company and for his rights under the contract of September 29, 1913. On the other hand, the petitioner was concerned primarily with eliminating a dangerous and disastrous competition. He does not claim that the $50,000 he paid for Wedderburn's stock represented its real value—that was merely the price Wedderburn demanded. The petitioner was forced to pay it or to continue to suffer from the competition of his business rival. Likewise, Wedderburn required that the petitioner should pay him an annuity of $7,200 for life as part of the transaction. The contract sets up no new or separate consideration for such payment but the promise of the petitioner to make it is contained in a clause concomitant and coordinate with all other covenants therein.

The petitioner maintains that his estimated savings of $25,000 per year in unnecessary advertising space which he would have been forced to purchase in order to compete with the Randolph Company, was chargeable directly to the annual payments made to Wedder-

burn. The control of the Randolph Company by the petitioner through the acquisition of its stock contributed as much to his savings as any other factor of the contract. He was compelled to subscribe, equally and interdependently, to all conditions imposed by Wedderburn.

The control of the Randolph Company and of its advertising and business policies was secured by the purchase of stock and by the substitution of the petitioner for Wedderburn as its manager. The stock itself with the accompanying control constituted a capital asset. We have held in numerous cases that annuity payments made in consideration of the conveyance of property in the trade or business of the purchaser are capital expenditures and are not deductible. *John C. Moore Corporation*, 3 B. T. A. 430; *Thomas H. Mastin*, 7 B. T. A. 72; *O. R. Fuller*, 11 B. T. A. 1025; *Pacific Flush Tank Co.*, 17 B. T. A. 896. On authority of these cases we hold that the above mentioned annuity payments are not deductible during the years under consideration.

In the alternative, the petitioner contends that a portion of the annuity paid each year is interest and is deductible as such. He cites *John C. Moore Corporation*, 15 B. T. A. 1140; aff'd. 42 Fed. (2d) 186. In that case, however, the value of the property conveyed in exchange for the annuity was established. In the case at bar we have no evidence relating to the value of the stock of the Randolph Company, of the assignment of Wedderburn's contract as manager of that company, or of his agreement to refrain from engaging in the patent business for a period of years. Hence, even if such an allowance were proper, we have no basis on which to compute it. See *Pacific Flush Tank Co.*, *supra.*

The second issue is whether the petitioner is taxable on a salary of $10,000 per year as fixed and approved under his contract with the Randolph Company or only on the portions thereof actually received by him in 1925 and 1927.

We are asked to construe the provision of the contract of September 29, 1913, relating to the salary of Wedderburn as advertising and managing agent of the Randolph Company. That clause sets forth the basis of the initial determination of the salary and provides that it shall remain at $5,000 " until the gross receipts, exclusive of the sale of the common stock, on loans made from banks, shall equal the sum of One Hundred Fifty Thousand Dollars ($150,000) per annum, whereupon the salary of John Wedderburn shall be increased to the sum of Ten Thousand Dollars ($10,000) per annum during the lifetime of the said corporation and the said John Wedderburn." The gross income of the company for 1914 was $180,976.80, well over the minimum of $150,000 named as a basis of

fixing the salary of the managing agent at $10,000 per year. The petitioner himself testified that he understood that the contract provided unequivocally for a salary of $10,000 per year. In 1922, although the receipts were only $96,419.44, he received the full amount of $10,000. This payment demonstrates that the company adopted the same interpretation of the contract as did petitioner. In 1925 and 1927 he actually received less than this amount. There is no evidence, however, that the Randolph Company could not or did not pay the salary deficiencies in the subsequent years. The only reason assigned for not paying the full amount in 1925 and 1927 was that the receipts of the company did not justify such payment.

We believe the interpretation placed on the contract by the parties in 1922 to be correct. Petitioner was on an accrual basis and is taxable during the years in question on the full amount of his salary, which should have been accrued on his books.

*Judgment will be entered under Rule 50.*